IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                          Plaintiff,                          OPINION AND
         v.                                                        ORDER

RICHARD E. DAVIS,                                          07-83M-X

                          Defendant.
_____

        Before the court is defendant Richard E. Davis's motion to dismiss the misdemeanor

criminal complaint filed against him on the ground of vindictive prosecution.  *See* dkt. 13.  The

government opposes the motion, arguing that Davis has not even made a sufficient preliminary

showing to justify an evidentiary hearing on his allegation.  *See* dkts. 20 and 30.   The

government is correct, so I am denying Davis's motion.

        Also before the court is Davis's motion to compel disclosure of the personnel files of the

agents involved in this case.  Not surprisingly, the government opposes this motion.  Because

Davis is not entitled to this information, I am denying his motion.


I.  Motion To Dismiss

                                        FACTS

        In early 2007 a confidential informant provided information about Richard Davis to the

Dane County Drug and Gang Task Force.  The CI claimed that he had bought eightballs of crack

from Davis within the recent past.  On February 13, 2007, the CI called Davis and arranged a

crack purchase.  When Davis arrived, officers stopped him and arrested him.  A search incident

to arrest recovered 0.3 grams of crack from Davis's pocket.  Task force agents then applied for

and obtained a warrant to search the apartment of Davis's girlfriend.  This search recovered firearms that the government claimed belonged to Davis.  Davis may not possess firearms because he a convicted felon.

Davis claims that the district attorney charged Davis in state court with possession of the crack cocaine found in his pocket.  The government questions whether this state charge involved the same conduct, but I will accept Davis's proffer for the purpose of deciding his motion. Shortly thereafter, the federal  grand jury returned an indictment against Davis charging him with unlawful possession of firearms.  The grand jury did not charge Davis with  possession of the crack cocaine found in his pocket.

In this court Davis moved to quash the search warrant on a number of grounds.  I filed a report and recommendation that the court grant the motion on the ground that the task force had not established a sufficient link between Davis and his girlfriend's apartment.  The government did not file objections but instead voluntarily moved to dismiss the indictment.  The court granted this motion.  Soon thereafter, in August 2007, the government filed a criminal information against Davis charging him with misdemeanor possession of the 0.3 grams of crack found in his pocket.  Some time prior to this, the state had dismissed its crack possession charge against Davis, which we are assuming *arguendo* involved the same conduct.  In the last three years, the U.S. Attorney has filed only four criminal informations charging simple possession of crack cocaine.

## ANALYSIS

Davis contends that the U.S. Attorney filed a misdemeanor drug possession charge against him in order to punish Davis for winning his suppression motion on the felony gun

2

charge.  This, says Davis, violates his right to Due Process and entitles him to dismissal of the federal charge.  *See United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357 U.S. 357, 363 (1978).

Davis identifies four types prosecutorial vindictiveness and divides them into two categories: vindictiveness in fact, which requires a defendant to show actual vindictiveness by the prosecutor; and the "apprehension of vindictiveness," in which the appearance of vindictiveness, shown through a sequence of events, gives rise to a prima facie showing of vindictiveness.  *See United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981).  Davis argues that the facts outlined above establish the government's actual and apparent vindictiveness: but for his successful suppression motion, the government never would have charged him with misdemeanor drug possession; *ergo*, the government singled him out and punished him for having won the motion and having successfully avoided felony prosecution.  Davis contends that the inference of vindictiveness is bolstered by the fact that the federal prosecutor knew that a state charge of simple possession was pending but filed a federal charge anyway.  *See* Motion To Dismiss, dkt. 13, at 5-6.

The government responds that whatever the law may be in the Ninth Circuit (and it is not clear how much weight *Hooton* still carries 27 years later), in the Seventh Circuit, a defendant only can establish prosecutorial vindictiveness by affirmatively showing through objective evidence that the prosecutor was motivated by personal animus (for instance, an attempt at self-vindication), *see United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003) as opposed to basing her charging decision on the usual determinative factors a responsible prosecutor would consider before filing a complaint, *see United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006).

3

The defendant has the initial burden because courts presume that the government has properly exercised its constitutional responsibilities to enforce the law.  This presumption of regularity only can be overcome by clear evidence to the contrary.  If a defendant meets his initial burden of by presenting objective evidence showing actual vindictiveness, then the burden shifts to the government to show that its reasons for bringing the charge were proper.[1]  To find vindictiveness, a court must be persuaded that the government would not have prosecuted the defendant but for its animus toward him, or its desire to penalize him.  *Id.*   As the Seventh Circuit noted in *Jarrett*,

> When a defendant is challenging his indictment, the presumption of regularity in favor of the government's conduct, combined with the requirement of clear evidence to the contrary and the rigorous standard by which such evidence must be evaluated, means that a claim of vindictive prosecution is extremely difficult to prove.

447 F.3d at 525-26.  *See also United States v. Segal*, 495 F.3d 826, 832-33 (7th Cir. 2007).

To the same effect, the Supreme Court in *United States v. Goodwin*, 457 U.S. 368 (1982), offered several observations relevant to the instant analysis.  First, in the pretrial setting, courts do not presume that a prosecutor's response to pretrial motions will be to penalize and deter a defendant for having filed them.  *Id.* at 381.  That said, perhaps the court should be more skeptical of prosecutorial action taken against a defendant after he prevailed on such a motion.  But the Court further observed that

> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal

---

[1] Contrariwise, some circumstances can give rise to a presumption *of* vindictiveness.  So far, however, this has occurred exclusively post-trial.  *See Jarrett*, 447 F.3d at 525.

4

> interest in prosecution. An initial decision should not freeze future
> conduct. . . . The initial charges filed by a prosecutor may not
> reflect the extent to which an individual is legitimately subject to
> prosecution.

457 U.S. at 382; *see also Segal*, 495 F.3d at 833.

The mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule. The Due Process Clause is not offended by all possibilities of increased punishment only by those that pose a realistic likelihood of vindictiveness. *Id.* at 384.

In the instant case, the absence of a presumption of vindictiveness puts the burden on Davis to present clear and objective evidence of genuine prosecutorial vindictiveness which the government has not rebutted. *Jarrett,* 447 F.3d at 526. Here, as in *Jarrett*, there are no statements or documents providing "smoking gun" evidence of animus. Davis can, however, point to the sequence of events and make a claim of vindictiveness that merits a second look. *See, e.g., United States v. Dickerson,* 975 F.2d 1245, 1251 (7ᵗʰ Cir. 1992)("If new federal charges were brought against Dickerson after a federal court granted his motion to suppress in a pending federal prosecution, the timing of the new federal chargers might raise an inference of actual vindictiveness. *But see Goodwin*, 457 U.S. at 381"). Here, that second look does not support a finding of vindictiveness.

What we have here is an up-tempo riff on *United States v. Perez*, 79 F.3d 79 (7ᵗʰ Cir. 1996). In *Perez*, the government charged inmate Perez with assault with intent to commit murder because he repeatedly slashed his cellmate with a razor, causing wounds requiring 108 stitches. The trial court (this judicial officer) adopted a *mens rea* instruction favorable to the government, and the jury convicted Perez. The conviction was reversed and remanded because

the government was not entitled to the lenient *mens rea* instruction.  On remand, the government added a lesser charge of assault with intent to commit bodily injury.  Perez deemed the addition of a second, lesser charge vindictive, so he moved to dismiss.  This court denied the motion.  At trial, the jury acquitted Perez of the greater charge but convicted him of the lesser.   On appeal, the Seventh Circuit deemed the government's conduct "prudent" because the jury instruction ruling had made it more difficult for the government to convict Perez of the greater charge. "This . . . was reason enough for the district judge to find that the addition of the new charge was not intended to teach people in Perez's position not to appeal–and very poor teaching it would have been, since he gained fifteen years of freedom by appealing."  79 F.3d at 81.

Davis's situation mirrors Perez's except it happened more quickly and all in one court: the government filed a serious felony charge against Davis, but did not file a second, lesser charge that was available to it at the time.  An adverse report and recommendation on suppression jeopardized the serious felony charge.  The government responded by seeking voluntary dismissal of the felony gun charge and filing a misdemeanor drug charge against Davis.  Worth noting is that the search warrant evidence had not actually been suppressed at the time the government made its decision.  As the government notes, it could have objected to the report and recommendation and appealed any adverse ruling.  It *chose* not to, for tactical and policy reasons.

Davis deems this sophistry, claiming that in this court, the report and recommendation is tantamount to the court's ruling.  Although Davis's claim might be generally accurate in a broad, empirical sense, it's not true in this case: the category of RR most likely to be rejected in this court is a recommendation to Judge Shabaz that he suppress evidence, particularly in a case

6

that I have deemed a wobbler.[2]  The government had an open shot at a favorable ruling from the Article III judge but it chose not to take it.  Therefore, Davis's motion to quash the search warrant resulted in dismissal of the ten-year felony charge and the addition of a one-year misdemeanor charge, a net gain of nine years' freedom.

Davis implicitly contends that he is entitled to walk away with no federal exposure at all, because the misdemeanor charge is a dead-ball foul by a sore loser.  Perhaps if the court actually had quashed the warrant this contention might present be a closer question, but the government acted on its own while it still had viable options allowing it to pursue the ten-year felony charge. It is the antithesis of vindictiveness for the government voluntarily to concede its felony prosecution in favor of a misdemeanor charge that is second cousin to a petty offense.[3]

Don't forget that Davis might already have been charged with this same drug possession in state court.[4]  But if we accept Davis's premise of a link between the state and federal drug possession charges, then it was impossible for Davis to walk away from this situation without being tried for drug possession by *someone*.  Further, this change of venue inured to Davis's

---

[2]  In the  the report I noted that "This one is close enough that it could go either way;" "His motion presents a close call;" "It is a much closer call whether it was objectively reasonable for the agents to believe that Davis kept any contraband at Apt. 103;" "It's hard to fault these agents;" and "it's not bad police work for them sometimes to take a flier and act on a gut feeling, particularly if they run it past a judge and the judge says yes."

[3]  The dispute over how many other simple possession charges the government has brought against other defendants in other cases adds nothing useful to the analysis.  There is no indication  that Davis is similarly situated to those who were charged or to those who could have been charged but were not.  The facts presented here sufficiently establish the logic and reasonableness of the government's initial decision not to charge Section 844(a) against Davis, followed by its course-reversal upon receipt of the unfavorable report and recommendation.

[4]  As previously noted, the government disputes whether the state charge arose out of the conduct charged federally and the proffered time line supports its position.  Even so, for the purposes of this motion I have adopted Davis's version of events *arguendo*.

benefit because dismissal of the state drug charge decreased Davis's prison exposure by another year (more if the state could have sought penalty enhancers against him).

So for all practical purposes, Davis already has obtained everything to which he possibly could be entitled on his motion to suppress. What he seeks by way of this motion to dismiss is an undeserved bonus. I am denying his motion to dismiss the criminal information.

## II. Motion To Disclose Personnel Files

Invoking *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), and F. Rs. Crim Pro. 12.1, 16 and 26.2, among other sources, Davis contends that he is entitled to disclosure by the government of evidence that *he* deems material to the preparation of his defense. Davis concedes that the Seventh Circuit does not require the government to turn over agent personnel files absent a preliminary showing from the defendant, and even then, submission would be to the court for *in camera* review. *See United States v. Andrus*, 775 F.3d 825, 843 (7th Cir. 1985). *See also United States v. Phillips*, 854 F.2d 273, 277 (7th Cir. 1988); *United States v. Mitchell*, 178 F.3d 904, 907 (7th Cir. 1999). When there is no indication that impeaching or other favorable information might be found in an agent's personnel file, then the government's *Brady* proffer suffices and the defendant may not obtain this discovery.

Whatever the rule might be in the Ninth Circuit, *see United States v. Henthorn*, 931 F.2d 29, 31 (7th cir. 1991), clearly the Seventh Circuit has declined to adopt it. I don't mean to be curt or dismissive of a 13 page argument, but this isn't a Gordian legal issue that requires a great deal of analysis by the court. Davis has not made any showing that the files he seeks contain

information that would be material to his defense.  The government has acknowledged its discovery obligations on the record in this case.  Nothing else is required.

ORDER

It is ORDERED that:

(1) Defendant Richard Davis's motion to dismiss the criminal complaint is DENIED.

(2) Defendant Richard Davis's motion to disclose personnel files is DENIED.

Entered this 7th day of January, 2008.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge